

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

No. 06-15-00146-CR

_____

CHASE CRAIG HUDSON, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the 8th District Court
Hopkins County, Texas
Trial Court No. 1424247

Before Morriss, C.J., Moseley and Burgess, JJ.
Memorandum Opinion by Justice Moseley

## MEMORANDUM OPINION

After Chase Craig Hudson's altercation with his eighty-seven-year-old step-grandfather, Bobby Casey, Hudson was charged with the third degree felony of injury to an elderly person. A Hopkins County jury found Hudson guilty of the charge and, since the penalty was enhanced to the status of a second degree felony due to Hudson's prior convictions (to which Hudson pled "true"), Hudson was sentenced to twenty years' confinement.

Hudson raised a singular point on appeal, that being that the trial court erred in refusing to grant a requested instruction of "consent" (sometimes called "mutual combat"[1]). We determine that the trial court did not commit error in refusing to include the requested instruction, and we affirm Hudson's judgment of conviction.

## I.     Background

The story of the conflict between Bobby and Hudson is one of two different tales. One of these tales is the rendition of the interaction that unfolds as it occurs; the other tale of the conflict is quite different when told in court by Bobby and Marie Casey, Hudson's step-grandfather and grandmother.

It is uncontested from both viewpoints that a mid-thirty-aged, single Hudson had no job and was living in a spare bedroom of the Casey home. A long-standing dispute existed between the residents of the house and their supplier of electricity because the Caseys believed the electrical

---

[1]*See Garza-Ramirez v. State*, Nos. 04-15-00420-CR & 04-15-00421-CR, 2016 Tex. App. LEXIS 2938 (Tex. App.—San Antonio Mar. 23, 2016, no pets.) (mem. op., not designated for publication).

utility costs to be much higher than was justified. For reasons not explained, a padlock had been placed on a utility box which appears to have contained the electrical usage meter.

As Marie was on the telephone with a representative of the electrical utility on August 4, 2014, Hudson entered the house with his friend, Chris Burney. Hudson was apparently being loud and Bobby tried to quiet him so Marie's attempts at telephone discussion would not be impaired. Bobby also was attempting to either obtain the key to the lock on the box covering the electrical meter or was attempting to have Hudson remove it, but Hudson was recalcitrant. The conflict between Bobby and Hudson escalated. It is at this juncture that the versions of the events diverge.

According to the story told on that day by the Caseys to peace officers and to the 9-1-1 operator, the verbal conflict between Hudson and Bobby progressed to a physical tussle between them. As they grappled, Hudson slammed Bobby into a wall, and the two of them fell together on the floor after they tripped over a dog bowl. While on the floor, Hudson struck Bobby repeatedly in the face with a cell phone. Alarmed, Marie placed a call to the 9-1-1 emergency number and said that police were needed.

Upon the arrival of the police, they found a bloodied Bobby sitting in a chair in the living room (as it developed, Bobby had suffered only a small scratch on his nose and suffered no other known ill effects). The first-arriving policeman was told that Hudson had gone to his bedroom and locked the door and that he was possibly armed with a .45 caliber handgun. The policeman could not get Hudson to respond. More policemen arrived, including a hostage negotiator and the head of the Sulphur Springs police SWAT[2] team. Although the Caseys provided the police with

---

[2]SWAT is an acronym for Special Weapons and Tactics.

3

two telephone numbers of cell phones owned by Hudson, the police could get no response to calls placed to either of those telephones. After some delay, the police encouraged Hudson to exit the bedroom by introducing tear gas into the room. Hudson was arrested and charged with injury to Bobby, an elderly person.[3] *See* TEX. PENAL CODE ANN. § 22.04(f) (West Supp. 2015).

According to Marie's testimony at trial, when she placed the 9-1-1 call which prompted the police to intervene, she did so only because she "overreacted" to the conflict between Bobby and Hudson. Although the recording of the 9-1-1 call clearly indicates that Hudson took the telephone receiver from Marie without her consent, she testified at trial that she willingly gave the telephone to him. She also testified that she should have known that Hudson was only joking around after the police arrived when he said that he had a gun in his room and that the police should not enter it. Marie said that Bobby was at fault for the tussle with Hudson, Bobby having instigated the ruckus.

By his testimony at trial, Bobby said that although he previously stated that Hudson had repeatedly slapped him in the face with a cell phone, that statement was in error. Rather, Bobby changed his description of the conduct to say that Hudson had merely "brushed" his face with it several times. Bobby also stated that although Hudson had told Bobby during the argument preceding the physical confrontation that he was going to "whip [his] butt" and "break [his] neck," it was Bobby who had initiated the conflict. The Caseys attempted more than once to have the charges against Hudson dropped.

---

[3]An "[e]lderly individual" is "a person 65 years of age or older." TEX. PENAL CODE ANN. § 22.04(c)(2) (West Supp. 2015).

4

The Caseys' daughter (Hudson's mother) and granddaughter (Hudson's cousin) testified that they each believed that both of the Caseys would lie to protect Hudson and that they believed the Caseys to be prevaricating in their testimony in order to shield Hudson from the consequences of his attack on Bobby.

## II.     Applicability of Defense of Consent (or Mutual Combat)

However, neither the quality nor the quantity of the evidence is in issue in the case because the sufficiency of the evidence has not been challenged on appeal.  The issue raised by Hudson revolves around the instruction which Hudson requested in writing to be included in the jury charge.  The requested instruction read, "You are instructed that the [sic] Bobby Casey's effective consent or the reasonable belief of Chase Craig Hudson that Bobby Casey consented to the conduct of Chase Craig Hudson is a defense to the charge of Injury to an Elderly Person as contained in the Indictment in this cause."

The above request was based upon the testimony of both Bobby and Marie that Bobby had initiated the physical confrontation between Bobby and Hudson, together with the defense set out in Section 22.06(a) of the Texas Penal Code, which provides that

> (a)     The victim's effective consent or the actor's reasonable belief that the victim consented to the actor's conduct is a defense to prosecution under Section 22.01 (Assault), 22.02 (Aggravated Assault), or 22.05 (Deadly Conduct) if:
>
> > (1)     the conduct did not threaten or inflict serious bodily injury; or
> >
> > (2)     the victim knew the conduct was a risk of:
> >
> > > (A)     his occupation;
> > >
> > > (B)     recognized medical treatment; or

5

(C)     a scientific experiment conducted by recognized methods.

*See* TEX. PENAL CODE ANN. § 22.06(a) (West 2011).

The trial court pointed out that the statute specifically allows the imposition of that defense to both accusations of common assault and aggravated assault as well as an accusation of the commission of deadly conduct but not to the offense of which Hudson was charged. The trial court ruled that the defense of consent was not available to a defendant charged in an offense described in Section 22.04 of the Texas Penal Code.

Hudson argued both at trial and on appeal that the defense of consent applies to all assaultive defenses, not just to those enumerated in Section 22.06(a), arguing that the trial court's interpretation of the statute is overly narrow.

> The duty of the courts in construing legislation is plain.
>
> The overarching rule of statutory construction is that we construe a statute in accordance with the plain meaning of its text unless the text is ambiguous or the plain meaning leads to absurd results that the legislature could not possibly have intended. When a statute is unambiguous, the courts should not add to or subtract from it.

*Ex parte Vela*, 460 S.W.3d 610, 612 (Tex. Crim. App. 2015) (citation omitted).

Surely, it would have been simple enough for the Legislature to have worded Section 22.06 of the Texas Penal Code in such a way that the defense applied to all assaultive offenses (as urged by Hudson here) or to have simply added Section 22.04 to the relatively short list of offenses for which the defense of "consent" is available. The Legislature chose to adopt neither of these means to expand the application of the defense. We can only assume that the Legislature believes that the defense of consent is not appropriate for the kind of offenses set out in Section 22.04, opting

6

to treat the elderly, children, and disabled persons as victims in a different fashion than the rest of the population. To add this offense to those the Legislature enumerated would be a violation of a primary rule of statutory construction.

Even should the Legislature's enumeration of the applicability of the defense of consent to only some assaultive offenses be ignored, this defense would still be unavailable to Hudson under the facts of this case. It was uncontested that Hudson threatened during the physical encounter to break Bobby's neck. A threat to break someone's neck is an unvarnished threat of serious bodily injury. That threat alone would render the applicability of the defense of consent inapplicable. *See* TEX. PENAL CODE ANN. § 22.06(a)(1).

We reject Hudson's argument and hold that the trial court was correct in refusing to submit the requested instruction. We affirm the conviction of Hudson.

Bailey C. Moseley
Justice

Date Submitted:     March 28, 2016
Date Decided:       April 27, 2016

Do Not Publish

7